Anthony G. Joseph, Pro Hac Vice Pending
Erin E. Masters, Pro Hac Vice Pending
Masters Law Group, LLC
30 N. LaSalle Street, Suite 2250
Chicago, IL 60602
(312) 609-1700
(312) 893-2002
ajoseph@masters-lawgroup.com
erinmasters@masters-lawgroup.com

Attorneys for Petitioner, Travis Mooring

# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

TRAVIS MOORING,

    Petitioner,

    v.

MARGARET PADILLA,

    Respondent.

Case No.

### VERIFIED COMPLAINT AND PETITION FOR ISSUANCE OF A SHOW CAUSE ORDER AND FOR RETURN OF MINOR CHILD TO GERMANY

NOW COMES the Petitioner, TRAVIS MOORING, by and through is attorneys, Masters Law Group, LLC, and as his Petition to the Court for Issuance of a Show Cause Order and Demand for Return of Minor Child to Germany, alleges and shows to the Court as follows:

**I.    Introduction**

    1.    The Petitioner, Travis Mooring (hereinafter referred to as the "Father"), is a resident of Steinbach, Germany (hereinafter referred to as "Germany") seeking the return of his minor

child who was wrongfully retained in the United States of America from Germany by the child's mother without the Petitioner's knowledge or consent on or about August 10, 2022.

2. The Father brings this action pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986)) (hereinafter, the "Convention," a copy of which is attached hereto as Exhibit A). The Convention came into effect in the United States of America (hereinafter, "United States") on July 1, 1988, and was ratified between the United States and Germany. Article I of the Convention explains that its objectives are: "(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting states; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Article II of the Convention provides that "[t]he judicial or administrative authorities shall act expeditiously in proceedings for the return of children."

3. The provisions of the Convention have been given the force and effect of law by the United States Congress through the passage of the *International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq.* (1995) (hereinafter "ICARA"). The ICARA was enacted for the specific purpose of "establish[ing] procedures for the implementation of the Convention in the United States." *42 U.S.C. § 11601(b)(l)*.

4. The Hague Convention authorizes a federal district court to determine the merits of a claim for the wrongful removal or retention of the children; it does not, however, allow the district court to consider the merits of the underlying custody dispute.

II. **Jurisdiction and Venue**

5. Jurisdiction is conferred on this Court by *28 U.S.C. § 1331* and *42 U.S.C.§ 11603(a)*.

6. Venue is proper in the United States District Court for the District of Alaska, pursuant to *28 U.S.C. § 9003, 28 U.S.C. § 139l(d)* and *42 U.S.C. § 11603(b)*, because the Respondent and minor child who are the subject of this Petition are located in the town of North Pole in Fairbanks County, Alaska, which is located in this District. Based upon information and belief, both the Respondent and child are located at 924 Marquette Lane, North Pole, Alaska 99705 in the United States of America.

### III. Parties and Wrongfully Removed Children

7. The Father is a United States citizen living and working in Germany full time as a Training Education Specialist for the Department of Defense. The Father was born on September 28, 1975 in the Purcell, Oklahoma, in the United States of America. The Father is both an "applicant" as defined in *42 U.S.C. § 11602(1)* and a "petitioner" as defined in *42 U.S.C. § 11602(4)*.

8. The Respondent, Margaret Padilla, (hereinafter referred to as the "Mother"), is a citizen of the United States. She is also a "respondent" within the meaning of 42 U.S.C. § 11602(6). On information and belief, the Mother is currently residing at a residence located in North Pole, Alaska, in the United States of America.

9. The parties are the parents of one (1) minor child, namely: D.V.M. (hereinafter referred to as the "minor child" or "child"), born March 15, 2012, currently age eleven (11). (See Redacted Birth Certificate attached hereto as Exhibit B). The child is under the age of

sixteen (16) and is thus subject to the terms of this Convention in accordance with Article 4 thereof.

10. The parties were married in San Diego, California in the United States of America, on September 1, 2002. (See Marriage Certificate attached hereto as Exhibit C).

11. The Father lived in Germany since 1996.

12. The Mother has lived in Germany since 2000.

13. In or around the year 2015, the Father moved to Steinbach, Germany.

14. The parties' marriage was registered in Germany and the United States.

15. On or around March 15, 2012 the parties minor child was born in Boblingen, Germany.

16. The Father was present for the birth of the parties' minor child and is listed as the father on the minor child's birth certificate. The Father has resided with the minor child in Germany since he was born.

17. The parties both established residences in Germany and lived together until their formal separation and the minor child resided with both parties until the Mother left Germany with the child in August 2022.

18. The parties have leased real property in Germany where they have resided therein.

19. The parties eventually filed for and were granted a divorce in Germany and were ultimately granted joint custody of the minor child. The Mother and Father remained in Germany and continued working fulltime therein after the dissolution of marriage and until Mother wrongfully removed the minor child.

20. Both the Mother and Father have maintained employment in Germany with the Department of Defense since living in Germany. The Father does not have any work located

in or connected to the United States and the Mother did not have any work located in or connected to the United States prior to moving to the United States.

21. On or around July 25, 2022, the Mother informed the Father via email she had purchased tickets unilaterally to take the minor child with her to the United States. The Mother made this decision unilaterally and without the Father's consent.

22. Father attempted to prevent the Mother from wrongfully removing the minor child by petitioning for the Amberg Local Court's Family Department to prevent any unilateral removal of the minor child to the United States.

23. On or around August 8, 2022, Judge Nordhus-Hantke entered a Court Order prohibiting the Mother and third parties from taking the minor child outside the borders of the Federal Republic of Germany. (See copy of Court Order attached as "Exhibit D"). The court entered the order on an expedited basis given the serious, timely concerns for the minor child and the Mother's willingness to remove the minor child absent the Father or any judicial consent.

24. The Court emphasized in their reasoning that the concrete dangers for the child associated with a journey to the United States must be averted and that the Father has a considerable interest in the child remaining in Germany.

25. The Court Order also requested for the police authorities of the Federal Republic of Germany to prevent any departure of the minor child from the Federal Republic of Germany, directing anyone who attempts to do so be taken into custody.

26. On or around August 9, 2022 the Father issued a restraining order against the Mother in a German Court to prevent the Mother from leaving Germany with the minor child.

27. On or around August 10, 2022, and one day following the Mother's obtainment of a restraining order against the Father, the Mother unilaterally left Germany with the minor child to the United States.

28. Ultimately, there was no intent by the parties to remain in the United States of America, or return, as both parties had business opportunities and jobs in Germany and had built their home there.

29. The minor child was born in Germany in March 2012. The minor child has never resided outside Germany throughout the course of his life up until the Mother unilaterally retained him in the United States.

30. The Father saw the minor children on a daily basis and maintained a close, meaningful relationship from the time they were born in Germany until the Mother unilaterally chose to retain the minor children in the United States.

## IV. Respondent's Violation of the Convention and ICARA

31. At the time the Mother wrongfully removed the minor child from Germany and retained him in the United States of America, the minor child's habitual residence, within the meaning of Article 3 of the Convention, was Steinbach, Germany. The Father did not consent or subsequently acquiesce to the minor child remaining in the United States.

32. The term "habitual residence" is undefined by the Convention. *Koch v. Koch*, 450 F.3d 703, 708 (7th Cir. 2006). The determination of habitual residence "is a fact-specific inquiry that should be made on a case-by-case basis. Moreover, . . . a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller v. Miller*, 240

F.3d 392, 400 (4th Cir. 2001). The analysis "focus[es] on the parents' last shared intent in determining habitual residence" *Koch*, 450 F.3d at 715.

33. In the present case, the below non-exhaustive actions of the parties clearly demonstrate that Germany, not the United States of America, is the habitual residence of the child:

    a. The minor child is a United States citizen that has resided solely and continuously in Germany from the time he was born until the Mother wrongfully removed him to the United States.

    b. The Father and Mother are both legal residents of Germany under the NATO SOFA Agreement.

    c. There is an active court order in Germany granting the Father custody and prohibiting the Mother from removing the child from Germany.

    d. The Father is a full-time Training Education Specialist for the Department of Defense with his position located in Germany.

    e. The Mother was also a full-time Training Education Specialist for the Department of Defense in Germany up until removing the minor child to the United States in August 2022.

    f. The Mother and Father resided together in Germany since 2000, prior to the birth of the minor child.

    g. The minor child lived solely and continuously in Germany from the time he was born until he was wrongfully retained in the United States.

    h. The minor child has established friendships and strong familial relations in Germany.

i. The parties both established residences in and lived together with the minor child in Germany from the time the child was born to the time Respondent wrongfully retained the minor child in the United States.

j. The Father has a steady income and stable home for the minor child.

k. All of the minor child's doctors and medical professionals are located in Germany.

l. All of the minor child's schooling took place in Germany and all of the child's associated education records are located in Germany.

m. All of the minor child's friends and the majority of the minor child's family are located in Germany.

n. The minor children participated in all of the cultural customs and traditions in Germany.

o. At no time did the parties make plans for the minor child to move to the United States.

p. The parties and their minor child have healthcare coverage in Germany.

q. The minor child received regular healthcare in Germany.

34. Because the minor child's habitual residence at the time he was wrongfully removed to the United States was Germany, the Father's custodial rights are defined by German law. *Convention Art. 3(a).*

35. The Father has custodial rights pursuant to German law, which made the child's removal and retention in the United States contrary to the Father's custodial rights.

36. Because the Mother's retainment of the minor child in the United States and removal from his habitual residence in Germany violated the Father's custodial rights, the removal and retainment was wrongful within the meaning of Article 3 of the Convention and

in violation of the Father's rights under the Convention and the *ICARA*, *42 U.S.C. § 11601, et seq*.

37. Because the Mother's retainment in the United States and removal of the child from his habitual residence was wrongful, the Convention and the *ICARA* authorize this Court to order the return of the child forthwith. *Convention, Art. 3; 42 U.S.C. § 11603*.

38. *42 U.S.C. § 11604(b)* conditions this Court's authority to order a child removed from a person having physical control of the child on the satisfaction of applicable requirements of state law.

39. ICARA also authorizes this Court, "[i]n furtherance of the objectives of ... the Convention ... [to] take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." *42 U.S. C. § 11604*. Under Section 210(a) of the UCCJEA, "[t]he court may order any party to the proceeding who is in this State or over whom the court has personal jurisdiction to appear personally before the court. If that party has physical custody of the child[ren], the court may order that [s]he appear personally with the child…. .

40. The purpose of the Convention is to determine which country is most appropriate to have jurisdiction, not to determine the best parent or to determine the best interest of the children. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." *Abbott v. Abbott*, 560 U.S. 1, 20, 130 S. Ct. 1983, 1995 (2010). "The entire purpose of the Convention is to deter parents from absconding with their children and crossing international

borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012).

41. A Complaint under the Convention may be treated as an application for a Writ of Habeas Corpus under *28 U.S.C. §2241, et seq.*, pursuant to which this Court may issue an order directing the Mother to show cause on an expedited basis why the child should not be returned immediately to the jurisdiction of his habitual residence in Germany. *See Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 132 (D. Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to 28 U.S.C.A. § 2243"); *see also Miller v Miller*, 240 F.3d 392, 397- 98 (4th Cir. 2001); *In re: McCullough*, 4 F. Supp. 2d 411 (W. D. Penn., 1998); Convention, Art. 11 (Establishing six-week target time frame for resolution of petitions under the Convention).

42. The present Petition was filed less than one (1) year from the time that the Mother wrongfully retained the children in the United States of America.

43. The Father has incurred, and will continue to incur, various necessary expenses, including court costs, legal fees, transportation and other costs relating to the return of the children. The Father respectfully requests that this Court award him all fees and costs, including transportation costs and attorney's fees, incurred as required by *28 U.S.C. § 9007*.

44. Pursuant to *28 U.S.C. § 9004* and the *Hague Convention, Article 16*, the Father requests that this Court issue an immediate order restraining the Mother from removing the child from the jurisdiction of this Court, directing any United States Marshall or other law enforcement officer to bring the child before this Court. The Father also asks this Court to schedule an expedited hearing on the merits of the Petition.

45. Pursuant to *28 U.S.C. § 9003(c)*, the Mother shall be given notice of these proceedings in accordance with the laws governing notice to interstate child custody proceedings.

**WHEREFORE**, the Petitioner, Travis Mooring, respectfully requests that this Court enter orders granting him the following relief:

A. A Preliminary Show Cause Order:

1. Commanding the Respondent, Margaret Padilla, (with or without the minor child) to appear in this Court to show cause why the minor child has been kept from his father and why the minor child should not be returned to Germany forthwith including the scheduling of an expedited preliminary hearing on the merits of the Complaint, an Order that Respondent show cause at this hearing why the child should not be returned to Germany and, pursuant to Federal Rule of Civil Procedure 64, an Order that the trial of the action on the merits be advanced and consolidated with the hearing on the verified complaint;

2. Requiring the Respondent to surrender to this Court any passports, residency and travel documents in her name, Petitioner's name, and/or in the name of the minor child;

3. Prohibiting the child's removal from the jurisdiction of this Court, pending final determination of the Petition;

4. Providing that if the Respondent fails to appear pursuant to this Court's Show Cause Order, this Court will issue an Order directing that the name of the minor child be entered into the national police computer system (N.C.I.C.) missing persons section and that an arrest warrant will be issued for Respondent; and

B. A Final Order:

1. An Order declaring and adjudicating that the Respondent's removal/retention of the child in the United States was wrongful under Article 3 of the Convention;

2. An Order compelling the return of the child to their habitual residence in Germany;

3. An Order requiring the Respondent to pay the necessary expenses incurred by the Petitioner in connection with these proceedings, pursuant to *22 U.S.C. § 9007*, such expenses and costs to be resolved via post-judgment motion; and

4. Granting such other and further relief as this Court deems just and proper.

Dated this 9th Day of August 2023

/s/ Anthony G. Joseph

MASTERS LAW GROUP LLC
Anthony G. Joseph, Esq.
Erin E. Masters, Esq.
30 N. LaSalle Street, Suite 2250
Chicago, Illinois 60602
Phone : (312) 609-1700
Facsimile : (312) 893-2002
ajoseph@masters-lawgroup.com

## VERIFICATION

Under penalties of perjury, the undersigned hereby certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information, and belief, such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

/s/ *Travis Mooring*
**TRAVIS MOORING**

This 9th day of August 2023

# EXHIBIT LIST

**Exhibit A**: The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (T.I.A.S. No. 11, 670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed Reg. 10494 (1986)

**Exhibit B**: Redacted Birth Certificate of D.V.M.

**Exhibit C**: Marriage certificate of Travis Mooring and Margaret Padilla.

**Exhibit D:** August 10, 2022 German Court Order.