IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TRAVIS MOORING,<br><br>               Petitioner,<br><br>vs.<br><br>MARGARET PADILLA,<br><br>               Respondent, | Case No. 4:23-cv-00015-JMK<br><br>**ORDER DENYING MOTION TO IMMEDIATELY SET EXPEDITED HEARING, AND ORDER TO SHOW CAUSE** |

At Docket 1, Petitioner, Travis Mooring, filed a Verified Complaint and Petition for Issuance of a Show Cause Order and for Return of Minor Child to Germany. At Docket 12, Respondent, Margaret Padilla, filed an Answer to Petitioner's Complaint. At Docket 14, Petitioner filed a Motion to Expedite Hearing. As set forth below, Petitioner's Motion at Docket 14 is **DENIED**. The Court hereby issues an Order to Show Cause; Petitioner shall produce documentation of Petitioner's custody rights, including Judge Nordhus-Hantke's August 8, 2022, Order.

I.    BACKGROUND

Petitioner brings this action pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") and the International Child

Abduction Remedies Act ("ICARA").[1] Petitioner and Respondent were married on September 1, 2002, in California.[2] Petitioner alleges that both Petitioner and Respondent lived in Germany starting in the year 2000 and following the birth of their minor child, D.V.M., on March 15, 2015.[3]

Eventually, the couple separated and divorced, but both parties remained in Germany.[4] According to Petitioner, the parties "were ultimately granted joint custody of the minor child,"[5] and Petitioner "saw the minor child[] on a daily basis."[6] After discovering that Respondent intended to relocate to the United States, Petitioner allegedly sought assistance from the Amberg Local Court's Family Department.[7] Petitioner represents that, on August 8 2022, Judge Nordhus-Hantke entered an order prohibiting Respondent from relocating D.V.M. outside the borders of the Federal Republic of Germany, and indicates that a copy of the order was attached to the Complaint as Exhibit D.[8] However, no such order was provided with Petitioner's Complaint.[9] Petitioner alleges he sought and obtained a restraining order on August 9, 2022, preventing Respondent from leaving Germany with D.V.M.[10] Lastly, Petitioner alleges that on August 10, 2022, Respondent unilaterally left Germany with D.V.M.[11]

---

[1] Docket 1 at ¶¶ 2–3.
[2] *Id.* at ¶ 10; Docket 12 at ¶ 10.
[3] Docket 1 at ¶¶ 11–17.
[4] *Id.* at ¶¶ 17–19.
[5] *Id.* at ¶ 19.
[6] *Id.* at ¶ 30.
[7] *Id.* at ¶ 22.
[8] *Id.* at ¶ 23.
[9] Docket 1.
[10] *Id.* at ¶ 26.
[11] *Id.* at ¶ 27.

*Mooring v. Padilla*     Case No. 4:23-cv-00015-JMK
Order Denying Motion, and Order to Show Cause     Page 2
Case 4:23-cv-00015-JMK    Document 15    Filed 11/07/23    Page 2 of 9

Three hundred and sixty four days later, on August 9, 2023, Petitioner filed his Complaint with the Court seeking a preliminary show cause order "commanding" Respondent appear in court, requiring Respondent surrender passports and other travel documents, prohibiting travel by D.V.M. pending resolution of the case, and providing that if Respondent fails to appear an arrest warrant be issued.[12] Petitioner also requested an order declaring that removing D.V.M from Germany was unlawful, compelling D.V.M.'s return to Germany, and requiring Respondent to pay the necessary expenses incurred by Petitioner.[13]

Respondent provides a drastically different account. Respondent alleges that Respondent had "primary custody and medical authority over the minor child."[14] Respondent alleges that Petitioner was aware of and agreed to the minor child traveling to the United States.[15] Respondent alleges she has "exercised primary custody of the minor child since the parties' separat[ion] in 2015."[16] Respondent further alleges there is "no active court order in Germany that demands the return of the minor child."[17] Respondent alleges that Petitioner falsely reported that D.V.M. had been kidnapped.[18] Petitioner's allegedly false kidnapping claim caused Respondent and D.V.M. to be detained by law enforcement when entering the United States.[19] However, Respondent allegedly provided

---

[12] *Id.* at ¶¶ A1–A4.
[13] *Id.* at ¶¶ B1–B4.
[14] Docket 12 at ¶ 19.
[15] *Id.* at ¶ 21.
[16] *Id.* at ¶ 46.
[17] *Id.* at ¶ 47.
[18] *Id.* at ¶ 49.
[19] *Id.*

necessary paperwork to demonstrate custody and subsequently was released.[20] Respondent calls into question whether Petitioner has filed the case at in good faith.[21]

At Docket 14, Petitioner filed his Motion to Immediately set Expedited Hearing ("Motion").[22] Petitioner's Motion highlights that complaints brought pursuant to the Convention should be processed expeditiously.[23] Petitioner requests an emergency hearing on the temporary measures sought in Petitioner's Complaint, including ordering Respondent surrender her travel documents and those of D.V.M.[24] The Motion also requests the Court "schedule a hearing on the merits of the underlying Complaint as soon as reasonably practicable."[25]

## II. LEGAL STANDARD

The Convention was adopted in "in response to the problem of international child abductions during domestic disputes."[26] The Convention's primary objectives are "to secure the prompt return of children wrongfully removed" and "to ensure that rights of custody and access under the" country of habitual residence are effectively respected.[27]

---

[20] *Id.*
[21] *Id.* at 8.
[22] Docket 14.
[23] *Id.* at ¶ 7.
[24] *Id.* at ¶ 13.
[25] *Id.*
[26] *Abbott v. Abbott*, 560 U.S. 1, 8 (2010).
[27] Hague Convention on the Civil Aspects of International Child Abduction, art. 1, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 22514 (hereinafter Hague Convention).

*Mooring v. Padilla*  Case No. 4:23-cv-00015-JMK
Order Denying Motion, and Order to Show Cause  Page 4
Case 4:23-cv-00015-JMK   Document 15   Filed 11/07/23   Page 4 of 9

The United States ratified the Convention and Congress implemented it through ICARA.[28] Germany is also a signatory state of the Convention.[29]

When a court considers relief sought pursuant to the Convention, ICARA empowers the court "to determine only rights under the Convention and not the merits of any underlying child custody claims."[30] This is to "ensure that custody is adjudicated in what is presumptively the most appropriate forum—the country where the child is at home."[31]

Under ICARA, a petitioner seeking relief pursuant to the Convention must establish by a preponderance of the evidence "that the child has been wrongfully removed or retained within the meaning of the Convention."[32] A child is wrongfully removed under the Convention when the removal or retention of a child "is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resid[ing] immediately before the removal or retention; and at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."[33]

---

[28] 22 U.S.C. § 9001, *et seq.*; *Lozano v. Montoya Alvarez*, 572 U.S. 1, 6 (2014).
[29] Hague Conference on Private Int'l Law, *Convention of 25 Oct. 1980 on the Civil Aspects of Int'l Child Abduction, Status* Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 [**https://perma.cc/BAL4-CSAQ**] (last visited Nov. 4, 2023).
[30] 22 U.S.C. § 9001(b)(4).
[31] *Monasky v. Taglieri*, 140 S. Ct. 719, 727 (2020).
[32] 22 U.S.C. § 9003(e)(1)(a).
[33] Hague Convention, art. 3.

*Mooring v. Padilla*  Case No. 4:23-cv-00015-JMK
Order Denying Motion, and Order to Show Cause  Page 5
Case 4:23-cv-00015-JMK   Document 15   Filed 11/07/23   Page 5 of 9

Because a petitioner's rights of custody are determined "under the law of the State in which the child was habitually resid[ing],"[34] a logical first step in the analysis is to determine the habitual residence of the child. Determining habitual residence requires a court examine "the totality of the circumstances specific to the case."[35] Habitual indicates "some degree of integration by the child in a social and family environment."[36] Federal courts generally agree that a habitual residence is "where a child is at home, at the time of removal or retention."[37] When considering the habitual residence of an older child "capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant," in determining the child's habitual residence.[38] Because determining habitual residence is a very fact intensive analysis, a court must be "sensitive to the unique circumstances of the case and informed by common sense."[39]

After determining the country where the child habitually resided, a court likely should examine whether the petitioner has rights of custody based on the law of the child's home country. ICARA explains that the rights of custody "means rights of care and custody of a child, including the right to determine the place of residence of a child, under the laws of the country in which the child is a habitual resident."[40] Rights of custody

---

[34] *Id.*
[35] *Monasky*, 140 S. Ct. at 723.
[36] *Id.* at 726 (internal quotation and citation omitted).
[37] *Id.*
[38] *Id.* at 727.
[39] *Id.* (internal quotation and citation omitted).
[40] 22 U.S.C. § 9101(21).

arise "by operation of law," "through a judicial or administrative decision," or "through a legally enforceable arrangement between the parties."[41]

Lastly, after establishing the petitioner has rights of custody, the petitioner must establish that "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."[42]

If a petitioner can establish a *prima facie* case under the Convention, the burden of proof shifts from the petitioner to the respondent to establish that one of the "narrow exceptions" applies.[43] A respondent opposing the return of a child must establish by a preponderance of the evidence that the petitioner was not "actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention."[44] A respondent also may oppose the return of the child if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," or if returning the child "would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms,"[45] but must establish such an exception by clear and convincing evidence.[46] A court "may also refuse to order

---

[41] 22 U.S.C. § 9101(21)(B); Hague Convention, art. 3.
[42] Hague Convention, art. 3.
[43] 22 U.S.C. §§ 9001(a)(4), 9003(e)(2).
[44] Hague Convention, art. 13; *see also* 22 U.S.C. § 9003(e)(2)(B) (requiring a respondent prove by a preponderance of the evidence that the exceptions in articles 12 or 13 of the Hague Convention apply).
[45] Hague Convention, arts. 13, 20; *see also* 22 U.S.C. § 9903(e)(2)(A) (requiring clear and convincing evidence that the exceptions in articles 13b or 20 of the Hague Convention apply).
[46] 22 U.S.C. § 9003.

*Mooring v. Padilla*                                Case No. 4:23-cv-00015-JMK
Order Denying Motion, and Order to Show Cause            Page 7
Case 4:23-cv-00015-JMK    Document 15    Filed 11/07/23    Page 7 of 9

the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of their views."[47]

### III. DISCUSSION

Petitioner's Complaint is deficiently pled. Petitioner will be granted leave to amend his Complaint and can provide necessary documentation to proceed.

Petitioner fails to sufficiently plead facts that if proven as true establish his rights of custody. Rights of custody arise "by operation of law," "through a judicial or administrative decision," or "through a legally enforceable arrangement between the parties."[48] Petitioner relies on an order allegedly issued on August 8, 2022, by Judge Nordhus-Hantke.[49] Petitioner's "Exhibit List" includes an Exhibit D and states it is an "August 10, 2022 German Court Order."[50] However, no German Court Order is included as an attachment. ICARA permits admission of documents without authentication,[51] but Petitioner must, at a minimum, include a copy of the German Court Order for this Court to consider.[52]

Petitioner's request for an expedited hearing is premature because Petitioner has failed to provide the Court with necessary documentation supporting his right of

---

[47] Hague Convention, art. 13.
[48] 22 U.S.C. § 9101(21)(B).
[49] Docket 1 at ¶ 23.
[50] *Id.* at 14.
[51] 22 U.S.C. § 9005.
[52] Hague Convention, art. 24. Petitioner shall submit a copy of the German Court Order, along with an English translation of the Order. Petitioner also shall submit English translations for any other judicial or administrative decisions relevant to establishing Petitioner's right of custody.

*Mooring v. Padilla*                                                          Case No. 4:23-cv-00015-JMK
Order Denying Motion, and Order to Show Cause                       Page 8
Case 4:23-cv-00015-JMK    Document 15    Filed 11/07/23    Page 8 of 9

custody. Petitioner may file a renewed motion for relief under ICARA after he supplies sufficient documentation to establish his right of custody.

### IV. CONCLUSION

Petitioner's Motion at Docket 14 is **DENIED**. Petitioner is granted leave to amend his Complaint. Petitioner shall amend his Complaint within seven (7) days of this Order to include the German Court Order and any judicial or administrative decisions relevant to establishing Petitioner's right of custody.

IT IS SO ORDERED this 7th day of November, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Mooring v. Padilla* Case No. 4:23-cv-00015-JMK
Order Denying Motion, and Order to Show Cause Page 9
Case 4:23-cv-00015-JMK   Document 15   Filed 11/07/23   Page 9 of 9